**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RAY PALMER, JR., on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                                                Case No:  6:15-cv-59-Orl-40KRS

DYNAMIC   RECOVERY   SOLUTIONS,
LLC and CASCADE CAPITAL, LLC,

      Defendants.

_____

## ORDER

Plaintiff, Ray Palmer, Jr., initiated this putative class action against Defendants, Dynamic Recovery Solutions, LLC ("Dynamic") and Cascade Capital, LLC ("Cascade"), to vindicate his rights and the rights of other similarly situated consumers under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p.  Plaintiff claims that 1,181 consumers received dunning letters from Defendants which violate the FDCPA's proscriptions against false, misleading, and unfair debt collection practices.  Both Dynamic and Cascade deny any wrongdoing.  The parties advise that they have resolved their dispute and now move the Court to certify a settlement class and to preliminarily approve their settlement agreement.  For the following reasons, and with the benefit of a preliminary fairness hearing, the Court finds that certification and preliminary approval are inappropriate at this time.

## I.      BACKGROUND

### A.      The Allegations

Plaintiff alleges in his Complaint that he and the putative class members incurred and subsequently defaulted on credit card obligations owed to Bank of America.  After the statute

of limitations had passed to legally enforce these defaulted obligations, Bank of America sold them to Cascade.  Cascade then contracted with Dynamic to collect on the debts.

In furtherance of its collection efforts, Dynamic mailed dunning letters to Plaintiff and the putative class members seeking payment of the defaulted credit card obligations.  Each letter informed the recipient that he or she owed a debt, that the original creditor was Bank of America, and that Cascade currently owns the right to collect on the obligation.  Each letter further outlined a number of payment plans through which the recipient could "settle" his or her account.  Upon completion of a payment plan, each letter promised that the account would be considered "satisfied and closed" and that "a settlement letter [would] be issued."  The letters never disclosed that the underlying credit card obligations were no longer legally enforceable.

By couching its collection efforts in terms of "settlement" and offering payment plans without disclosing the fact that the underlying credit card obligations were no longer legally enforceable, Plaintiff claims that the dunning letters misrepresent the character or legal status of the obligations and, as a result, constitute a false, misleading, and unfair debt collection practice.  Both Dynamic and Cascade deny that the letters violate the FDCPA and maintain that, even if they do, any violation was the result of a bona fide error.  Cascade additionally denies liability on the grounds that it cannot be held vicariously liable under the FDCPA for any misconduct by Dynamic.

### B.    The Proposed Settlement

The parties represent that, through their counsel, they have engaged in arms-length negotiations which have resulted in settlement.  The terms of that settlement include the following:

- Dynamic will pay $12,000 to the class as statutory damages under the FDCPA, which will be distributed evenly among the 1,181 class members for a pro rata award of $10.16 per class member.

- Dynamic will pay Plaintiff $2,000 in recognition for his service as class representative and $1,000 in statutory damages as permitted by the FDCPA, for a total award to Plaintiff of $3,000, which shall be paid separately from the class settlement fund.

- Plaintiff will be deemed the prevailing party and Dynamic will pay Plaintiff's reasonable attorney's fees and costs.

- Dynamic will pay the costs of class notice, distribution, and administration.

- The class will release Defendants from all known and unknown claims which could have been brought in this lawsuit.

- Defendants deny liability and retain the right to collect on the defaulted obligations.

- Class members may opt out of the class and the settlement or may enter an appearance to object to the settlement's fairness.

- Any unclaimed amount from the $12,000 class settlement fund will be divided equally between the National Consumer Law Center and the National Association of Consumer Advocates as a cy pres remedy.

## II.   DISCUSSION

### A.   Class Certification

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the [four] requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)).   The Court assumes for the purposes of this Order only that all class certification requirements are satisfied.   *But see* note 6, *infra*.   The Court therefore turns directly to the question of whether the parties' proposed settlement should receive preliminary approval.

**B.      Preliminary Approval of the Settlement**

A class action may not be settled, dismissed, or otherwise compromised without the district court's approval.  Fed. R. Civ. P. 23(e).  A district court should only approve a class action settlement if it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  The Eleventh Circuit has enumerated six factors a district court should consider in evaluating the fairness, adequacy, and reasonableness of a class action settlement: (1) the plaintiff's likelihood of success on the merits, (2) the range of the plaintiff's possible recovery, (3) the point within the range of possible recovery at which settlement is fair, adequate, and reasonable, (4) the expected complexity, cost, and duration of litigation, (5) any opposition to the proposed settlement, and (6) the stage of the litigation at which settlement was reached.  *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  While these six factors are helpful in answering the fairness inquiry, they are neither determinative nor exhaustive, and the court may consider other relevant factors based on the particular nuances of the case and the settlement proposed.  *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).  Additional factors warranting consideration may include (7) an unjustifiably burdensome claims procedure, (8) unduly preferential treatment of the class representative, (9) the terms of settlement in similar cases, (10) an unreasonably high award of attorney's fees to prevailing class counsel, and (11) impermissibly broad releases of liability.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011); *In re Prudential Ins. Co.*

*Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317, 323–24 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.62 (2004).[1]

Although class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1429 (2015); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1150 (11th Cir. 1983) (finding that reliance on the recommendations of the parties and their counsel "fosters rubber stamping by the court rather than the careful scrutiny which is essential in judicial approval of class action settlements"). This maxim particularly holds true in the context of precertification settlement, where the parties' speedy and seamless resolution of their dispute should prompt the court to consider whether the proposed settlement represents a bona fide end to the adversarial process or the collusive exploitation of the class action mechanism to the detriment of absent class members. *See Lane v.*

---

[1]  The list of potential factors to consider could go on. On this point, two astute commentators observe:

> [F]actor tests . . . suffer from shortcomings. These tests grow by accretion. They are commodious closets into which the residues of past cases can be deposited—closets that never need to be reorganized or cleaned out because the tests are suggestive only. Appeals courts never need to consider whether a factor test should be overruled. Over time, despite the good intentions that motivated their creation, they become unwieldy and disorganized . . . .
>
> The sheer number of factors is a problem. A trial judge could hardly be blamed for feeling a sense of foreboding when contemplating the nineteen items on the Third Circuit's checklist [in *Prudential*]. Running through them all seems a dreary task. Courts applying these tests often recite the litany and engage in pro forma analyses, but their hearts are not in it.

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. LEGAL ANALYSIS 167, 172 (2009) (footnotes omitted).

*Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013).  In these circumstances, the court must employ "a higher degree of scrutiny in assessing [a settlement's] fairness."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  Ultimately, the proponents of a settlement bear the burden of proving its fairness, adequacy, and reasonableness.  *Faught*, 668 F.3d at 1239.

After reviewing the proposed settlement in this case through the prism of the above-listed factors, three reasons counsel against its approval:

**1.     The Proposed Settlement Does Not Fairly and Adequately Account for Plaintiff's Likelihood of Success Against Defendants**

In describing why they believe their proposed settlement is fair, the parties rely heavily on what they perceive to be the uncertainty of Plaintiff's case when weighed against Defendants' defenses.  However, upon review of those defenses and the relevant case law, the Court finds that the most significant deficiency in the parties' proposed settlement arises out of the settlement's low value despite Plaintiff's high likelihood of succeeding against Defendants on the merits.

a.     Strength of Plaintiff's Case

In order to prevail under the FDCPA, Plaintiff will need to prove that (1) he was the object of collection activity arising out of consumer debt, (2) that Defendants are debt collectors under the FDCPA, and (3) that Defendants committed an act or omission proscribed by the FDCPA.  *Pescatrice v. Orovitz*, 539 F. Supp. 2d 1375, 1378 (S.D. Fla. 2008).  Defendants do not dispute that they are debt collectors and that Plaintiff was the object of collection activity arising out of consumer debt.  Instead, Defendants take the position that the dunning letter in this case does not violate the FDCPA.

Plaintiff alleges that attempting to collect a time-barred debt without disclosing the fact that it is time-barred constitutes the false or misleading representation of the debt's character or legal status in violation of 15 U.S.C. § 1692e(2)(A).   Defendants disagree, claiming that the letters are not misleading because they do not misrepresent the character or legal status of the debts to be collected and do not threaten legal action.   In determining whether a collection practice is false or misleading under § 1692e, the Eleventh Circuit looks to the "least sophisticated consumer."   *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985).   "This unsavvy consumer is charged with a basic level of understanding and willingness to read with care, but is of below average sophistication or intelligence, and is uninformed or naïve."   *Alborzian v. JPMorgan Chase Bank, N.A.*, 185 Cal. Rptr. 3d 84, 91 (Cal. Ct. App. 2015) (quoting *Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011)) (citations and internal quotation marks omitted); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).   A debt collection practice which tends to mislead the least sophisticated consumer violates the FDCPA.   *Jeter*, 760 F.2d at 1175.   Therefore, Plaintiff can only prevail under § 1692e(2)(A) if the dunning letters sent by Dynamic would tend to mislead the least sophisticated consumer as to the character or legal status of the debt to be collected.

The Eleventh Circuit has not yet had the occasion to answer the question of whether a debt collector's failure to disclose that a debt is time-barred constitutes a false or misleading debt collection practice in violation of § 1692e(2)(A).   Nevertheless, a plain reading of the statute indicates that it is and that the threat of litigation need not accompany the misrepresentation to impose liability on a debt collector.   The Eleventh Circuit has reiterated many times that the FDCPA must be construed "to give full effect to each of its provisions," must be interpreted with regard to its "entire statutory context," must be

understood using the plain and ordinary meaning of the words chosen by Congress, and must be applied so as to achieve its purpose of "eliminate[ing] abusive debt collection practices." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312, 1315–16 (11th Cir. 2015) (quoting 15 U.S.C. § 1692(e) and *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999)).

The provision through which Plaintiff premises liability proscribes "[t]he false representation of the character, amount, or legal status of any debt."   15 U.S.C. § 1692e(2)(A).  The conduct prohibited by the plain meaning of this language is the false *representation* of a debt's character, amount, or legal status.  Moreover, § 1692e(2)(A) does not contemplate that the threat of litigation must accompany a misrepresentation to be actionable as Defendants suggest.  Indeed, had Congress intended to forbid threatening litigation in connection with the false representation of the character or legal status of a debt, it would have narrowed § 1692e(2)(A) accordingly; Congress's omission on this point indicates that it held no such intent.  *See Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling.") (quoting *In re Haas*, 48 F.3d 1153, 1156 (11th Cir. 1995)).  Further belying Defendants' position is a subsequent provision which proscribes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).  This category seems more apt to include the threats of litigation which Defendants contend are tacitly included in § 1692e(2)(A).  It would be strange indeed for Congress to forbid certain conduct in one provision of a statute through words and then forbid the exact same conduct in another provision of the same statute through silence.  A plain reading of § 1692e(2)(A) therefore leads to the inescapable conclusion that

it prohibits the false representation of a debt's character or legal status regardless of whether litigation is threatened.

Applying the plain language of § 1692e(2)(A) to the dunning letter in this case, Plaintiff's prospects of prevailing against Defendants appear strong.   The letter sent by Dynamic seeks repayment of an unenforceable debt without disclosing that fact.   Whether a debt is barred by an applicable statute of limitations is fundamental to the debt's character and legal status.   *See Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1260 (11th Cir. 2014) (explaining the significance to debtors of statutes of limitations in determining a debt's legal status), *cert. denied*, 135 S. Ct. 1844 (2015).   The failure to disclose that a debt is barred by the statute of limitations would likely mislead the least sophisticated consumer as to the character or legal status of his or her debt, thus violating § 1692e(2)(A).   Although this nondisclosure is itself sufficient to violate the FDCPA, the letters go one step further by asking the consumer to "settle" his or her account.   Such settlement offers serve only to compound confusion over the debt's true character or legal status, as a consumer researching what "settlement" means would reasonably find the dictionary's definition of the term: "an act of bestowing or giving possession under legal sanction."   *Settlement*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/settlement (last visited May 4, 2016); *see also Settlement*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining the term to mean "[a]n agreement ending a dispute or lawsuit").   Consequently, the dunning letter in this case is doubly misleading by failing to disclose that the debt it seeks to collect is time-barred and by giving the false impression that Cascade could sue to enforce the debt.

Other circuit courts have reached the same conclusion.   In *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), the Seventh Circuit faced a situation factually identical to what the parties present here.   The plaintiff in *McMahon* incurred and defaulted

on a consumer debt which eventually ended up in the hands of a third party debt collector. *Id.* at 1013.  After the statute of limitations had passed to sue on the debt, the debt collector mailed the plaintiff a dunning letter which offered to "settle [his] account in full."  *Id.*  Like the dunning letter in this case, the letter in *McMahon* failed to disclose that the debt was barred by the applicable statute of limitations.  *Id.*

In concluding that failing to disclose that a debt is legally unenforceable constitutes a false or misleading debt collection practice, the Seventh Circuit relied on the plain meaning of the pertinent statutory language:

> The proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable . . . is straightforward under the statute. Section 1692e(2)(A) specifically prohibits the false representation of the character or legal status of any debt. Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA.

*Id.* at 1020.  In further support of its conclusion, the Seventh Circuit pointed to the fact that unsophisticated consumers[2] would be misled by the inclusion of a "settlement offer" in a dunning letter because "a settlement offer on a timebarred debt implies that the creditor could successfully sue on the debt," thus misrepresenting the debt's character and legal

---

[2]   The Seventh Circuit utilizes the "unsophisticated consumer" standard instead of the "least sophisticated consumer" standard in determining whether a debt collector's conduct is misleading.  Many commentators have attempted to differentiate between the two types of consumers, with most concluding either that there is no meaningful distinction or that the unsophisticated consumer standard is marginally more demanding for plaintiffs to satisfy.  *See, e.g.*, Jeffrey S. Peters, Note, *Meaningful Involvement in Collections: Should Ethics or the FDCPA Govern?*, 34 PACE L. REV. 1240, 1247–51 (2014) (finding any variation between the two standards "to be more an issue of semantics than of an actual difference in the law"); Christian Stueben, Note, *Judge or Jury? Determining Deception or Misrepresentation Under the Fair Debt Collection Practices Act*, 78 FORDHAM L. REV. 3107, 3127–32 (2010) (finding the unsophisticated consumer standard "slightly more stringent").  In any event, whatever subtleties may exist are unimportant for the purposes of this Order.

status.  *Id.* at 1021–22.  The *McMahon* Court additionally found that "[m]atters may be even worse if the debt collector adds a threat of litigation, but such a threat is not a necessary element of a claim [under § 1692e(2)(A)]."  *Id.* at 1020 (citation omitted).  The Seventh Circuit therefore flatly rejected the argument Defendants make in this case that the nondisclosure of a debt's character or legal status must be accompanied by the threat of litigation to be false or misleading; nondisclosure alone violates the FDCPA.  *Id.*

The Sixth Circuit agreed in *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015).  There, the plaintiff also incurred and defaulted on a consumer debt which was sold to a third party debt collector after the statute of limitations to legally enforce the debt had lapsed.  *Id.* at 395.  The debt collector mailed the plaintiff a dunning letter which offered to "settle" the debt, but did not divulge that the debt was no longer legally enforceable.  *Id.* at 395–96.  Citing *McMahon*, the Sixth Circuit found that the enforceability of a debt is crucial to its character and legal status and that a debt collector violates the FDCPA when it fails to disclose in a dunning letter that the debt it seeks to collect is no longer enforceable.  *Id.* at 398–99.  Also like *McMahon*, the Sixth Circuit found that framing a dunning letter in terms of "settlement" exacerbates its violative effect because "a 'settlement offer' falsely implies that the underlying debt is enforceable in court."  *Id.* at 399.  *See also, e.g.*, *Carter v. First Nat'l Collection Bureau, Inc.*, No. 4:15-CV-1695, 2015 WL 5695273, at *5 (S.D. Tex. Sept. 11, 2015) (finding that a debt collector misleads a consumer in violation of § 1692e(2)(A) when it uses the terms "settle" or "settlement" in connection with the recovery of a debt, but fails to disclose that the debt is barred by the statute of limitations); *Finley v. Dynamic Recovery Sols., LLC*, No. 14-cv-04028-TEH, 2015 WL 3750140, at *5 (N.D. Cal. June 15, 2015) ("[T]he least sophisticated consumer could view an offer to settle as a veiled threat of litigation, or, at the least, as a misrepresentation that a debt is still enforceable.").

Based on the plain meaning of § 1692e(2)(A) and after considering the relevant case law, it appears that Plaintiff has a strong likelihood of proving that the dunning letter mailed by Dynamic violates the FDCPA by misleading the least sophisticated consumer as to the character or legal status of his or her debt.

b.   <u>Strength of Defendants' Defenses</u>

Defendants argue that should the dunning letter in this case violate the FDCPA, they will nevertheless prevail against Plaintiff.   First, Cascade asserts that it cannot be held vicariously liable under the FDCPA for any misconduct attributable to Dynamic.   Cascade's position, however, is unfounded.   "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules . . . ."   *Meyer v. Holley*, 537 U.S. 280, 285 (2003).   Among these rules is the well-established tenet that principals are vicariously liable for the misconduct of their agents when committed within their scope of authority, regardless of whether the principal authorized or even knew about the agent's misconduct.   *Id.* at 285–86; *see also LeBlanc*, 601 F.3d at 1201–02 (applying vicarious liability principles to FDCPA claim).   In order to impose vicarious liability on a principal for its agent's violation of the FDCPA, the plaintiff must show (1) that the principal controls or has the right to control the agent, and (2) the agent consents to act on the principal's behalf.   *See Meyer*, 537 U.S. at 286.

Cascade bases its vicarious liability defense solely on the grounds that it does not exercise sufficient control over Dynamic to warrant imposing vicarious liability.   Cascade contends that Dynamic is merely an independent contractor which collects debts for Cascade without Cascade's input or direction.   While courts continue to grapple with whether a non-debt collector principal can be held vicariously liable for its debt collector agent and,

if so, what level of control is needed,[3] there is no doubt that a principal exercises the requisite level of control when it is itself a debt collector. *See, e.g.*, *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404–05 (3d Cir. 2000).  This approach makes sense, as the entire purpose of the FDCPA would be defeated if debt collectors were permitted to insulate themselves from liability by farming out their collection efforts to smaller debt collectors who face only nominal monetary judgments due to the FDCPA's net worth caps.[4] Cascade does not dispute that it is a debt collector under the FDCPA.  By virtue of its status as a debt collector, Cascade therefore exercises the requisite control over Dynamic to impose vicarious liability for Dynamic's violation of the statute.

Both Dynamic and Cascade also assert the FDCPA's bona fide error defense as a means for escaping liability in this case.  In order to avail themselves of the defense, Defendants will need to prove that their violation (1) was not intentional, (2) was the result of a bona fide error, and (3) occurred despite the maintenance of procedures reasonably adapted to avoid such an error.  15 U.S.C. § 1692k(c); *Edwards v. Niagra Credit Sols., Inc.*,

---

[3]  Although it is unclear what level of control would be necessary, it at least appears that the Eleventh Circuit would take the position that a non-debt collector principal may be held vicariously liable for the actions of its debt collector agent.  *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201–02 (11th Cir. 2010) (per curiam) (focusing on the relationships among the parties and stating as dicta that it is "immaterial" for purposes of imposing vicarious liability whether a defendant is a debt collector under the FDCPA).

[4]  As discussed in more detail below, the FDCPA limits a debt collector's liability in a class action lawsuit in proportion to the debt collector's net worth.  *See* 15 U.S.C. § 1692k(a)(2)(B). If debt collectors were not exposed to vicarious liability for the activities of their agents, debt collectors with high net worths would simply retain debt collectors with low net worths to collect on their behalf.  These debt collectors could then engage in collection activities without regard to the FDCPA's prohibitions and with relative impunity, as the possibility of facing a small monetary judgment based on their modest net worth would likely pale in comparison to the prospect of recovering delinquent debts the value of which would satisfy such a judgment many times over.  Likewise, the higher valued debt collector would be indifferent to the lower valued debt collector's compliance (or lack thereof) with the FDCPA because it would be shielded from liability entirely.

584 F.3d 1350, 1352–53 (11th Cir. 2009).   However, the U.S. Supreme Court has limited the defense solely to clerical and factual mistakes made in the collection of debts.   *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).   Such mistakes include typographical errors, miscalculations of amounts owed, and other inadvertent missteps in the debt collection process.   *See, e.g.*, *Newman v. Ormond*, 396 F. App'x 636, 642–43 (11th Cir. 2010) (per curiam) (finding that bona fide error defense covered debt collector's typographical error in deposition notice sent to consumer where the notice scheduled the consumer's deposition at a time prohibited by the FDCPA); *McGhee v. Weinerman & Assocs.*, No. 13-C-958, 2015 WL 2401928, at *5 (E.D. Wis. May 20, 2015) (granting bona fide error defense where computer software malfunction caused consumer's account to be incorrectly designated as subject to collection); *Puglisi v. Debt Recovery Sols., LLC*, 822 F. Supp. 2d 218, 227–30 (E.D.N.Y. 2011) (granting bona fide error defense where debt collector inadvertently attempted to process consumer's payment before the date scheduled).   A debt collector therefore cannot prevail on a bona fide error defense where its violation of the FDCPA stems from a mistaken interpretation of the statute's legal requirements.   *Jerman*, 559 U.S. at 587; *see also, e.g.*, *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 813 (N.D. Ill. 2010) (denying bona fide error defense where debt collector mistakenly believed that calling consumer thirty-one times over twelve days did not amount to harassment prohibited by the FDCPA).   Because Defendants' alleged violation in this case revolves around their misinterpretation of the law—that is, Defendants' mistaken belief that the failure to disclose to a consumer that they cannot legally enforce a debt does not misrepresent the character or legal status of that debt—the violation would not be covered by the bona fide error defense.

In light of the above, it is not difficult to see that Plaintiff enjoys a high likelihood of prevailing on the merits against Defendants.  The dunning letter mailed by Dynamic seeks recovery of a debt rendered legally unenforceable by the applicable statute of limitations without disclosing that fact.  The plain meaning of § 1692e(2)(A) prohibits such a practice.  Moreover, Cascade's theory that it cannot be held vicariously liable for Dynamic's violation of the FDCPA is legally unsupportable and Defendants' bona fide error defense appears to be unavailable.

> c.    The Range of Recovery and Whether the Proposed
>       Settlement Falls at a Fair, Reasonable, and Adequate
>       Point Within that Range

After this weighing of the parties' respective cases, the Court next considers the range of Plaintiff's possible recovery and whether the proposed settlement falls at a fair, adequate, and reasonable point on that range.  In a class action lawsuit, the FDCPA permits an award of statutory damages up to $1,000 to each named plaintiff and up to the lesser of $500,000 or 1% of the violating debt collector's net worth, which is to be shared among the remaining class members.  15 U.S.C. § 1692k(a)(2)(B).  The value of statutory damages is ultimately decided by the trier of fact after considering the frequency and persistence of the debt collector's violation, the nature of the violation, the debt collector's resources, the number of persons adversely affected by the debt collector's misconduct, and the extent to which the debt collector intentionally violated the FDCPA.  *Id.* § 1692k(b)(2).[5]

---

[5]   Although § 1692k(b) refers to "the court's" consideration of these factors, the Eleventh Circuit has held that the term "court" in this context refers to either the judge or the jury where a party has demanded a jury trial.  *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 832 (11th Cir. 1982); *see also Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998) (relying on the Eleventh Circuit's holding in *Sibley* to conclude that it is for the jury to determine any award of statutory damages under the FDCPA where a party has demanded a jury trial).

Dynamic represents that its net worth is $174,769.40 and Cascade represents that its net worth is $9,277,917.95. Applying § 1692k's limitations, the class's maximum possible recover against Dynamic would be capped at 1% of its net worth, equaling $1,747.69 or $1.48 per class member. The class's maximum recovery against Cascade would likewise be capped at 1% of its net worth, equaling $92,779.18 or $78.56 per class member. The total maximum recovery the class could expect from both Defendants totals $94,526.87, amounting to a maximum pro rata recovery of $80.04 per class member. The minimum possible recovery Plaintiff could expect is $0.00 in the event Defendants prevail on liability or the trier of fact determines, after considering the factors listed in § 1692k(b)(2), that the value of statutory damages is zero. Accordingly, the possible range of recovery in this case is $0.00 to $94,526.87 for the class as a whole and $0.00 to $80.04 for each class member individually.

The Court finds the parties' proposed settlement of $12,000 ($10.16 per class member) to be unfair for two reasons. First, the parties severely discount Plaintiff's likelihood of success on the merits. While there is certainly value in not having to endure the costs and uncertainties of trial, the Court would expect a fair class settlement to exceed 12.7% of the maximum possible recovery in a case such as this one where Defendants are essentially defenseless in the face of seemingly clear liability.

Second, the settlement agreement unfairly permits Cascade to elude the onus of settlement by placing the heavy burden of funding the class's award solely on Dynamic. As explained above, Cascade can be held equally liable with Dynamic for Dynamic's violation of the FDCPA, thus exposing Cascade to a judgment of up to $92,779.18. However, the proposed settlement envisions Dynamic supplying the full amount of the settlement fund on Cascade's behalf. Allowing Cascade to not pay anything despite its equal exposure would

be patently unfair to the class, who should benefit from Cascade's substantially higher net worth.  Shouldering Dynamic with the responsibility of paying Cascade's share of the settlement fund is unfair to Dynamic as well.  The purpose of capping a debt collector's liability at the lesser of $500,000 or 1% of its net worth is to balance Congress's interest in punishing unscrupulous debt collection practices with its interest in protecting the debt collector from an excessively punitive judgment that might force it into bankruptcy, thus ruining the debt collector's business and rendering the class's award effectively worthless.  *See Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000).  By requiring Dynamic to pay $12,000 to the class (close to 7% of its net worth), Cascade pushes Dynamic closer to that brink which Congress intended it to avoid.  The Court would therefore expect Cascade to reasonably contribute to the class settlement fund.

### 2.     The Proposed Settlement Unfairly Confers Preferential Treatment on Plaintiff to the Detriment of the Class

The parties' proposed settlement is also unfair because it unduly confers preferential treatment on Plaintiff in the form of a $2,000 incentive award, which will be paid to Plaintiff in addition to his $1,000 statutory award as the named plaintiff.  Generally, the purpose of an incentive award is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  However, although incentive awards are "fairly typical," *id.* at 958 (citing a study which found that 28% of class actions settled between 1993 and 2002 included incentive awards), settlements granting disproportionately greater benefits on the named plaintiff should be viewed with suspicion and should only be approved where "the totality of the circumstances combine to dispel the 'cloud of collusion which such a settlement suggests,'" *Holmes*, 706 F.2d at 1148 (quoting

*Women's Comm. for Equal Emp't Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 182 (S.D.N.Y. 1977)).  In analyzing the propriety of an incentive award, courts consider (1) the financial loss or risk of financial loss the plaintiff assumed by becoming a litigant, (2) any notoriety which accompanied being named in the lawsuit, (3) the time and effort the plaintiff expended in assisting the prosecution of the case, (4) the degree to which the class benefitted from the plaintiff's litigation activities, (5) incentive awards granted in similar cases, and (6) the ratio of the incentive award to each class member's expected pro rata recovery.  *See, e.g.*, *In re AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853(SWK), 2007 WL 314511, at *2 (S.D.N.Y. Oct. 26, 2007); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005).

Incentive awards are frequently approved in class actions where the plaintiff was extensively involved in discovery and litigation activities.   Extensive involvement encompasses producing documents, responding to discovery requests, sitting for depositions, attending or testifying at court hearings, participating in settlement negotiations, and consulting with class counsel on litigation strategy.  *See, e.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d. 766, 787 (N.D. Ohio 2010) (approving incentive awards of $5,000 to plaintiffs who substantially contributed to litigation and testified at the fairness hearing); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 258–59 (D.N.J. 2005) (approving $10,000 incentive awards to plaintiffs who worked closely with counsel and were crucial to settlement, $3,000 incentive award to plaintiff who produced documents, appeared for deposition, and attended the fairness hearing, and $1,000 incentive award to plaintiff who only played a minor role in settlement negotiations); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving higher incentive awards to plaintiffs who produced personal records, appeared for lengthy depositions, and attended hearings); *In re*

*Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357–58 (N.D. Ga. 1993) (approving incentive awards of $5,000 to plaintiffs who appeared for deposition and $2,500 to plaintiffs who produced documents in discovery).

Incentive awards are also regularly approved where the plaintiff achieved substantial benefits for the class. Substantial benefits include large class settlement funds, significant awards to individual class members, and injunctive relief or the defendant's agreement to stop engaging in the conduct which caused the plaintiff to file suit. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (affirming district court's approval of $5,000 incentive awards for each of nine plaintiffs who obtained $27,250,000 settlement fund); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015) (approving $3,500 incentive award to plaintiff who obtained $2,000 in unpaid wages for each class member); *Poertner v. Gillette Co.*, No. 6:12-cv-803-Orl-31DAB, 2014 WL 4162771, at *1 & n.5 (M.D. Fla. Aug. 21, 2014) (permitting $1,500 incentive award to plaintiff who obtained up to $12 for each class member, guaranteed charitable donations valued at $6 million, and the defendant's agreement to cease allegedly misleading advertising practices), *aff'd*, 618 F. App'x 624 (11th Cir. 2015) (per curiam), *cert. denied*, No. 15-765, 2016 WL 1079040 (U.S. Mar. 21, 2016).

Indeed, incentive awards in consumer protection lawsuits are largely tied to the plaintiff's involvement and the benefits he or she achieves for the class. *See, e.g.*, *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *2, *18 (S.D. Fla. Apr. 13, 2016) (approving $5,000 incentive awards where each plaintiff helped investigate claims, produced documents, attended depositions, and conferred with counsel throughout the litigation and obtained $32.3 million settlement fund along with five-year injunction against the defendant's allegedly unfair lender-placed insurance practices); *Good v.*

*Nationwide Credit, Inc.*, No. 14-4295, 2016 WL 929368, at *14–15 & n.5 (E.D. Pa. Mar. 14, 2016) (approving $1,000 incentive award for each plaintiff in FDCPA case who spent hours with class counsel discussing litigation and strategy, attended fairness hearings at great personal expense, and obtained $196,960 class settlement fund which represented the maximum allowable recovery by statute); *Gonzalez v. Dynamic Recovery Sols., LLC*, Nos. 14-CIV-24502, 14-CIV-20933, 2015 WL 738329, at *3–5 (S.D. Fla. Feb. 23, 2015) (approving $1,000 incentive award in FDCPA case where plaintiff engaged in significant discovery and obtained nationwide injunction against defendant's use of illegal telephone calls, $15,000 charitable donation, and the right for unnamed class members to initiate individual lawsuits); *McKinnie v. JP Morgan Chase Bank, N.A*., 678 F. Supp. 2d 806, 810, 818 (E.D. Wis. 2009) (approving $1,000 incentive award to plaintiff in Electronic Fund Transfer Act case who obtained full reimbursement of ATM fees wrongfully charged to class members); *Rosenau v. Unifund Corp*., 646 F. Supp. 2d 743, 748, 755 (E.D. Pa. 2009) (approving $3,000 incentive award to plaintiff in FDCPA litigation who attended the fairness hearing, engaged in discovery, consulted with counsel on strategy, and obtained a class settlement fund of $100,000, equaling $18.17 per class member); *Parker v. Time Warner Entm't Co*., 631 F. Supp. 2d 242, 250, 269, 276 (E.D.N.Y. 2009) (approving $2,500 incentive awards for each plaintiff in Cable Act case who produced documents, testified at depositions, and participated in settlement negotiations and obtained settlement fund valued at approximately $3.7 million, $500,000 in charitable donations, and the defendant's agreement to revise the privacy policy which caused the litigation); *cf. Crawford v. Equifax Payment Servs., Inc*., 201 F.3d 877, 882 (7th Cir. 2000) (rejecting FDCPA settlement in part for granting $2,000 worth of statutory and incentive awards to plaintiff who obtained no monetary relief for 214,000 class members and compromised their right to pursue further

litigation); *Schuchardt v. Law Office of Rory W. Clark*, No. 15-cv-01329-JSC, 2016 WL 232435, at *2 (N.D. Cal. Jan. 20, 2016) (noting that the named plaintiffs declined to seek incentive awards where settlement of FDCPA claims was achieved with minor effort).

Here, the parties' proposed settlement contemplates that Plaintiff will receive an incentive award of $2,000 to be paid separately from the $12,000 class settlement fund.  The proposed award represents more than 16% of the total value of the class settlement fund and is almost 200 times greater than what any individual class member could expect to receive from this lawsuit.  However, although the parties justify Plaintiff's $2,000 reward as being "in recognition for his service" to the class, Plaintiff's participation in the litigation has been minimal.  Plaintiff has not appeared for deposition, did not attend the preliminary fairness hearing, and the only document he has produced is the two-page dunning letter from Dynamic which he attached to his Complaint.  Further, in a declaration filed in support of the parties' motion for certification and preliminary approval, Plaintiff describes the extent of his involvement in the proposed settlement as remaining informed of the settlement negotiations through his attorneys and authorizing his attorneys to settle.   Plaintiff's contribution to the litigation does not merit such a large incentive award.

More astonishingly, Plaintiff has achieved very little for the class despite what the magnitude of his incentive award would suggest.  Each class member who does not opt out will receive $10.16.  In exchange, class members waive their right to pursue this and any other claim which Plaintiff could have included in the Complaint and allow Defendants to continue using the dunning letters which Plaintiff alleges violates the FDCPA.  In essence, all Plaintiff has obtained for each absent class member is nominal monetary relief, the waiver of potentially valuable claims, and the misfortune of being subjected to the same purportedly illegal collection practices which gave rise to this lawsuit in the first place.  All the while,

Plaintiff collects a handsome $2,000 bounty in addition to his full $1,000 in statutory damages as the named plaintiff.  The proposed settlement therefore projects the unseemly appearance that Plaintiff has been purchased at the expense of the class.[6]

### 3.   The Proposed Settlement was Reached in the Absence of Meaningful Discovery

Perhaps underlying the deficiencies discussed above is the fact that the parties achieved their settlement early in the litigation and without the benefit of meaningful discovery.  In their joint memorandum of law, the parties inform the Court that Defendants have "responded to some of Plaintiff's written discovery requests," but that Defendants have not yet propounded their requests for discovery on Plaintiff and that no depositions have been conducted.  In fact, the proposed settlement agreement reveals that Defendants have not even produced the names and addresses of the 1,181 putative class members who received Dynamic's dunning letter and that this information will only be disclosed upon the Court's approval of the settlement.

The speedy resolution of this dispute despite a dearth of important factual and legal investigation has likely led the parties to misjudge the merit and value of Plaintiff's claims. The Court therefore concludes that the proposed settlement is not adequate or reasonable based on the stage of the litigation at which it was reached.

---

[6]   Although the Court assumed at the beginning of its discussion that Plaintiff would adequately represent the class as required by Rule 23(a)(4), it is worth mentioning that some courts find that the payment of an inappropriate incentive award in a class action settlement agreement might speak to the plaintiff's inadequacy as class representative under that rule.  *See, e.g., Ontiveros v. Zamora*, 303 F.R.D. 356, 364–66 (E.D. Cal. 2014) (reducing incentive award to eliminate class representative's potential conflict of interest in representing the class).  Based on the size of Plaintiff's incentive award in this case compared to the relief obtained for the rest of the class, it would not be unreasonable to conclude that Plaintiff's representation has been compromised.  The parties should be mindful of this issue in future settlement negotiations and applications to certify the class.

## III.    CONCLUSION

In sum, the Court finds that the parties' proposed settlement is unfair, inadequate, unreasonable, and not worthy of preliminary approval.  Should the parties wish to continue settlement negotiations, they will need to (1) increase the total amount to be awarded to the class to more fairly reflect Plaintiff's likelihood of success, (2) restructure the settlement to more fairly account for Cascade's exposure, (3) reconsider the amount of the incentive award granted to Plaintiff, and (4) determine whether additional discovery is needed to fairly appraise this lawsuit.[7]

Accordingly, it is **ORDERED AND ADJUDGED** that the parties' Joint Motion for Class Certification and Preliminary Approval of Class Settlement (Doc. 43) is **DENIED**.  The parties have **thirty (30) days** from the date of this Order to file a renewed joint motion for class certification and preliminary approval of settlement, if appropriate.  Alternatively, Plaintiff has **thirty (30) days** from the date of this Order to file a motion for class certification.

**DONE AND ORDERED** in Orlando, Florida on May 4, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

[7]   As a final note, the Court does not find that any other factor required to be reviewed by the Eleventh Circuit warrants approval of the proposed settlement notwithstanding the deficiencies identified in this Order.  Specifically, the Court does not anticipate this FDCPA case to be complex or expensive, and it is too early to gauge the class's reaction to the proposed settlement since they have not yet been notified.